# IN THE SUPREME COURT OF THE STATE OF NEVADA

AVETIS ARCHANIAN,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 66763

FILED

MAY 2 4 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order denying appellant Avetis Archanian's postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Kathleen E. Delaney, Judge.

Archanian murdered 67-year-old Elisa Del Prado and 86-year-old Juana Quiroga in the jewelry store where he and the victims worked. Archanian stole several pieces of jewelry before leaving the store. Archanian was convicted of two counts of first-degree murder with the use of a deadly weapon, victim 65 years of age or older, and two counts of robbery with the use of a deadly weapon, victim 65 years of age or older. The jury sentenced Archanian to death for the murders. This court affirmed the convictions and sentences on appeal. *Archanian v. State*, 122 Nev. 1019, 145 P.3d 1008 (2006).

In this appeal from the denial of his postconviction habeas petition, Archanian argues that the district court erred in denying his claims of ineffective assistance of trial and appellate counsel. He also contends that this court erred in reweighing the aggravating and mitigating circumstances after invalidating one of the aggravating circumstances on direct appeal and that cumulative error warrants reversal. We affirm.

18-20013

*Ineffective assistance of counsel*

"A claim of ineffective assistance of counsel presents a mixed question of law and fact, subject to independent review," *Evans v. State*, 117 Nev. 609, 622, 28 P.3d 498, 508 (2001), *overruled on other grounds by Johnson v. State*, 133 Nev., Adv. Op. 73, 402 P.3d 1266 (2017), but the district court's purely factual findings are entitled to deference, *Lara v. State*, 120 Nev. 177, 179, 87 P.3d 528, 530 (2004). To prove ineffective assistance, a petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Kirksey v. State*, 112 Nev. 980, 987-88, 998, 923 P.2d 1102, 1107, 1114 (1996); *see also Riley v. State*, 110 Nev. 638, 646, 878 P.2d 272, 278 (1994) ("The defendant carries the affirmative burden of establishing prejudice."). If the petitioner does not carry his burden on either showing, the ineffective-assistance claim fails. *Strickland*, 466 U.S. at 697.

*Failure to introduce mitigating evidence*

Archanian contends that trial counsel did not conduct an adequate mitigation investigation and should have presented evidence of familial and personal mental health issues related to childhood injuries, education problems, chemical exposure, and cultural trauma. He further argues that counsel should have explained that cultural attitudes toward mental health care prevented him from receiving adequate care and his coping attempts resulted in more profound symptoms.

We conclude that Archanian failed to demonstrate that trial counsel acted deficiently in not presenting this evidence. Even if counsel had been aware of this evidence, a decision not to introduce the evidence would not have been unreasonable. *See Cullen v. Pinholster*, 563 U.S. 170,

196 (2011) (explaining that appellate court is "required not simply to give the attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [an appellant's] counsel may have had for proceeding as they did" (internal quotation marks, alterations, and citations omitted)); *McNelton v. State*, 115 Nev. 396, 410, 990 P.2d 1263, 1273 (1999) (noting that decision concerning what mitigation evidence to present is a tactical one). The purported mental illness is not particularly compelling, in that it did not seem to have an impact on Archanian's everyday life, such as his ability to work, start businesses, marry, and care for his family. While his businesses eventually failed, it is not clear that they failed because of his mental health issues as opposed to his general business aptitude. Moreover, this evidence carried a substantial risk of casting him in an unfavorable light. *See Lisle v. State*, 131 Nev., Adv. Op. 39, 351 P.3d 725, 733 (2015) (recognizing that "mitigation evidence can be a double-edged sword that may indicate diminished culpability but at the same time may indicate an increased risk of future dangerousness"). Evidence submitted with the petition indicated that Archanian's alleged mental illness manifested in reckless financial decisions, trouble maintaining employment, gambling, borrowing hundreds of thousands of dollars from legitimate and illicit lenders, and misappropriating his client's property. An attorney could have reasonably concluded that the possibility that this evidence would provide a basis for a sentence less than death was outweighed by the risk that the jury would view the murders and robbery as a callously rational attempt to alleviate Archanian's debt.

Archanian also failed to demonstrate prejudice. Although there is a single statutory aggravating circumstance, it is a compelling one:

Archanian was convicted of more than one count of first-degree murder.[1] The new mitigation evidence is not so powerful as to outweigh that aggravating circumstance. Chiefly, the psychological evidence merely suggests some theoretical mental health issues, but the psychologist acknowledged that an accurate clinical diagnosis was beyond his ability. While the asserted toxic exposure is notable, it is based on conjecture of relatives rather than on scientific findings. Additionally, as discussed above, the new mitigation evidence casts Archanian in a less favorable light. It follows that Archanian did not demonstrate a reasonable probability that, if this mitigating evidence had been presented, any of the jurors or this court on direct appeal would have concluded that there were mitigating circumstances sufficient to outweigh the aggravating circumstance, *see* NRS 200.030(4)(a), or that a death sentence otherwise was not warranted. *See Strickland,* 466 U.S. at 695 (describing prejudice prong where ineffective-assistance claim challenges a death sentence). Because Archanian did not show deficient performance or prejudice, the district court did not err in denying this claim.

---

[1]Jurors originally found two statutory aggravating circumstances, but this court concluded on direct appeal that the aggravating circumstance that each murder was committed during the commission of a robbery was invalid under *McConnell v. State,* 120 Nev. 1043, 102 P.3d 606 (2004). *Archanian,* 122 Nev. at 1039-40, 145 P.3d at 1022-23.

*Failure to present expert testimony or investigate another suspect*[2]

Archanian argues that trial counsel should have presented expert testimony to show that the killings were not premeditated and deliberate. The proffered evidence does not refute the evidence that the killings were premeditated and deliberate. Archanian's expert reconstructed the murder based on trial evidence but offered no opinion as to whether the evidence indicated that the murders were premeditated and deliberate. Although Archanian suggests that the murder was unplanned given the small size of the workroom, the space clearly provided adequate room to repeatedly strike both women as well as an apparent blind spot in the store's surveillance system. The fact that cash and valuables were left at the scene does not necessarily indicate that the murders and robbery were unplanned; it just as likely indicates carelessness, nervousness, or lack of time. Evidence of Archanian's financial mismanagement does not support an inference only that Archanian acted on impulse; it also suggests a motive for him to have planned the murders and robbery. And the proffered expert evidence does nothing to undermine the State's alternative theory that the murders occurred during the course of a robbery, of which there was overwhelming evidence. It follows that Archanian did not show deficient performance or prejudice and therefore the district court did not err in denying this claim.

---

[2]To the extent that Archanian asserts that counsel failed to present evidence apart from these issues, he does not indicate what defense counsel should have presented given the evidence against him and therefore has not shown deficient performance or prejudice. *See Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984) (requiring specific factual allegations).

Archanian next contends that trial counsel should have investigated and presented evidence to implicate another person, Yesai Magdesian. We disagree. The evidence implicating Magdesian comes from a witness heavily biased against him and the witness' statement also implicates Archanian. Magdesian's criminal record does not prove that he committed the offenses at issue here, nor has Archanian alleged sufficient circumstances indicating that Magdesian's prior bad acts would have been admissible, *see* NRS 48.045(1), (2). In contrast, the surveillance video and other evidence implicate Archanian. The video shows him arrive at work, exchange greetings with the victims, and go to his work area. Several minutes later, the video shows a partially obscured view of the attack on one of the victims and Archanian leave the work room and remove jewelry from the display cases. During a later search of Archanian's home, officers recovered the missing jewelry and items of his clothing that were stained with the victims' blood. Considering both the omitted evidence and the evidence presented at trial, it follows that Archanian has not shown deficient performance or prejudice. Therefore, the district court did not err in denying this claim.

### Failure to suppress evidence

Archanian contends trial counsel should have moved to suppress evidence seized during the search of his home. We disagree. During the search of his home and vehicle pursuant to a warrant, officers observed gloves, pants, and a leather case that appeared to have been stained with blood. Although not described in the warrant, the presence of blood on the clothing made it readily apparent that the clothing was evidence of a crime; therefore, officers properly seized it. *See Luster v. State*, 115 Nev. 431, 434-35, 991 P.2d 466, 468 (1999) (providing that officers may

seize objects not specified in a valid warrant if (1) their initial intrusion was lawful, (2) they inadvertently discover the evidence, and (3) it is readily apparent that the items are evidence of a crime). As such, Archanian has not shown deficient performance or prejudice. *See Donovan v. State*, 94 Nev. 671, 675, 584 P.2d 708, 711 (1978) (recognizing that counsel is not ineffective for failing to file a futile motion); *see also Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (explaining that when an ineffective-assistance claim is based on counsel's failure to file a motion to suppress evidence allegedly obtained in violation of the Fourth Amendment, the prejudice prong requires a showing that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence").

*Failure to lodge objections and preserve record*

Archanian argues that trial counsel should have objected to the admission of two photographs (State's Exhibits 71 and 72) on the grounds that they were gruesome and unfairly prejudicial.[3] Appellate counsel challenged the admission of these photographs as gruesome and prejudicial. Although trial counsel failed to object and thereby preserve the issue for appeal, this court applied plain-error review and considered whether there was error that was plain from the record and prejudiced Archanian. *Archanian*, 122 Nev. at 1031, 145 P.3d at 1017. After observing that "the

---

[3]Archanian also argues that the district court erred in admitting several photographs over counsel's objection. This court concluded on direct appeal that the district court did not abuse its discretion in admitting those photographs, *see Archanian*, 122 Nev. at 1030-31, 145 P.3d at 1017-18, and Archanian has not demonstrated that our prior decision was "'so clearly erroneous that continued adherence to [it] would work a manifest injustice,'" *Hsu v. Cnty. of Clark*, 123 Nev. 625, 631, 173 P.3d 724, 729 (2007) (quoting *Clem v. State*, 119 Nev. 615, 620, 81 P.3d 521, 525 (2003)).

forensic pathologist used [the two photographs] to describe [Del Prado's] wounds and explain the cause of death," this court concluded that "Archanian failed to show that the district court committed plain error in admitting [the evidence]." *Id.* This court's observations about the two photographs indicate that the court determined that the photographs were relevant to explain the cause and manner of Del Prado's death and therefore there was no error.[4] *See id.* (discussing a similar photograph of Quiroga and observing that "[t]his court has repeatedly upheld the admission of autopsy photographs, even grisly ones, when they are used to demonstrate the cause of death and reflect the severity of wounds and the manner in which they were inflicted"). It follows that Archanian cannot show prejudice based on trial counsel's failure to object and therefore the district court did not err in rejecting this claim.

Archanian also argues that trial counsel should have objected to the composite video presented at trial on the ground that it was not accurate. This court repeatedly observed on direct appeal that a detective testified that the video shown to the jury was consistent with the video he observed at the scene when replaying the footage and when it was copied from the hard drive. *Archanian*, 122 Nev. at 1028-30, 145 P.3d at 1015-17. The trial record did not reveal any "evidence suggesting that the composite

---

[4]While the photographs depicted the results of medical intervention, Archanian concedes that they also depicted injuries sustained during the attack. *See Clark v. Com.*, 833 S.W.2d 793, 794 (Ky. 1991) (noting that photographs become less admissible when the subject has been "materially altered by mutilation, autopsy, decomposition or other extraneous causes, not related to commission of the crime, so that the pictures tend to arouse passion and appall the viewer"); *Hayes v. State*, 85 S.W.3d 809, 816 (Tex. Crim. App. 2002) ("[A]utopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself.").

videotape was inaccurate," *id.* at 1029, 145 P.3d at 1016, and Archanian has not identified any inaccuracies even now. As such, Archanian has not shown deficient performance or prejudice. Therefore, the district court did not err in denying this claim.

*Failure to review security video on ADT hard drive*

Archanian argues that trial counsel should have viewed the original hard drive footage from the store security system as it may have yielded a clearer view of the perpetrator. The record does not contain any information, exhibits, or evidentiary hearing testimony concerning comparisons between the original digital footage and the videotape introduced at trial. Nor does it contain any contemporaneous photographs of Archanian and Magdesian to support Archanian's assertion that the quality of the video introduced at trial was more likely to result in a misidentification. Instead, other evidence in the record indicates that it was unlikely that the video depicted another suspect. It follows that Archanian did not show deficient performance or prejudice. Therefore, the district court did not err in denying this claim.

*Voir dire*

Archanian argues that trial counsel was ineffective during voir dire because they should have life-qualified the jury, questioned the venire about pretrial publicity, asked about the veniremembers' ability to consider mitigating evidence, and removed Jurors Webb and Greene, either with a for-cause challenge or a peremptory challenge.

Decisions to make certain inquiries during voir dire involve trial strategy and it is not clear that the strategy employed in this case was objectively unreasonable. *See, e.g., Stanford v. Parker*, 266 F.3d 442, 453-55 (6th Cir. 2001) (observing that defendant has right to life-qualify jury

upon request but failure to do so may be reasonable trial strategy); *Brown v. Jones*, 255 F.3d 1273, 1279-80 (11th Cir. 2001) (reasonable trial strategy for counsel to focus jurors' attention on the death penalty as little as possible and therefore not life-qualify jurors); *Camargo v. State*, 55 S.W.3d 255, 260 (Ark. 2001) ("[T]he decision to seat or exclude a particular juror may be a matter of trial strategy or technique."). The record indicates that the impaneled jurors were questioned by either the State, defense counsel, or the judge as to their ability to consider all available punishments and defense counsel inquired as to whether they would automatically impose the death penalty. Defense counsel also inquired into what information some veniremembers might find mitigating or whether they could consider mitigating evidence. The trial judge questioned the veniremembers about pretrial publicity and whether they could set aside anything they had learned as a result and consider only the evidence introduced at trial. Considering this record, Archanian failed to demonstrate deficient performance.

The allegations also fail on the prejudice prong because Archanian did not show that any of the seated jurors were not impartial. *See Wesley v. State*, 112 Nev. 503, 511, 916 P.2d 793, 799 (1996) (stating that "[i]f the impaneled jury is impartial, the defendant cannot prove prejudice" resulting from district court's limitation of voir dire); *see also Ham v. State*, 7 S.W.3d 433, 439 (Mo. Ct. App. 1999) ("Even assuming it would have been better strategy to strike [a particular juror], we fail to see how [defendant] could have been prejudiced because one qualified juror sat rather than another."). Archanian identifies two sitting jurors who he claims were predisposed to find him guilty or impose the death penalty: Greene and Webb. However, neither juror indicated that they had more

than a vague familiarity with the facts as reported. Both indicated that they could set aside what they remembered from the media reports and evaluate only the evidence introduced at trial. Greene also stated that he could remain impartial even though he had been the victim of an armed robbery. Because Archanian failed to show that any biased jurors served on the jury that convicted and sentenced him, he failed to show prejudice. Therefore, the district court did not err in denying these claims.

*Change of venue*

Archanian contends that trial counsel should have moved for a change of venue based on media coverage. The record does not indicate that the pretrial publicity had been so pervasive that Archanian could not receive a fair trial in the Eighth Judicial District. In particular, no seated juror indicated that the publicity would prevent them from acting impartially. *See Sonner v. State*, 112 Nev. 1328, 1336, 930 P.2d 707, 712-13 (1996) (recognizing that, even where pretrial publicity has been pervasive, a change of venue is not warranted where jurors assure the court that they would be fair and impartial), *modified on rehearing on other grounds by* 114 Nev. 321, 955 P.2d 673 (1998). Because any effort to change the venue therefore would not have met with success, Archanian has not shown deficient performance or prejudice. Accordingly, the district court did not err in rejecting this claim.

*Jury instructions*

Archanian argues that trial counsel failed to ensure that the district court accurately instructed the jury.[5] We conclude that these arguments lack merit for the reasons discussed below.

First, Archanian argues that trial counsel should have objected to the premeditation, malice, anti-sympathy, and equal-and-exact-justice instructions. We disagree. The district court gave the premeditation instruction set forth in *Byford v. State*, 116 Nev. 215, 236-37, 994 P.2d 700, 714-15 (2000).[6] The challenges to the malice, anti-sympathy, and equal-and-exact-justice instructions have been rejected repeatedly by this court. *See, e.g., Leonard v. State (Leonard II)*, 117 Nev. 53, 78-79, 17 P.3d 397, 413 (2001) (determining that the statutory language defining implied malice is well established in Nevada and accurately informs the jury of the distinction between express and implied malice); *Byford,* 116 Nev. at 232, 994 P.2d at 712 (upholding malice instruction where the jury is properly instructed on the presumption of innocence); *Sherman v. State,* 114 Nev. 998, 1011, 965 P.2d 903, 912 (1998) (upholding anti-sympathy instruction

---

[5]Archanian improperly incorporates by reference other parts of his opening brief to support his argument that trial counsel provided ineffective assistance in connection with the jury instructions. *See Evans v. State,* 117 Nev. 609, 647, 28 P.3d 498, 523 (2001) (summarily rejecting an argument "assert[ing] that trial counsel were ineffective for the reasons set forth in the issues raised in the rest of the brief" (internal quotations omitted)), *overruled on other grounds by Johnson v. State,* 134 Nev., Adv. Op. 73, 402 P.3d 1266 (2017). We have addressed Archanian's issues with trial counsel's performance in this respect to the extent they are discernible.

[6]Archanian also failed to demonstrate prejudice as to the premeditation instruction where the State proceeded on the alternative theory that the murder occurred during the course of a robbery and there was overwhelming evidence to support a conviction based on that theory.

SUPREME COURT
OF
NEVAOA



(O) 1947A

where trial court also instructs the jury to consider mitigating facts); *Leonard v. State (Leonard I)*, 114 Nev. 1196, 1208, 969 P.2d 288, 296 (1998) (upholding definition of malice referring to "heart fatally bent on mischief" and stating that equal-and-exact-justice instruction does not concern the presumption of innocence or burden of proof). The district court also gave Nevada's statutory reasonable doubt instruction as set forth in and mandated by NRS 175.211. *See Leonard I*, 114 Nev. at 1209, 969 P.2d at 296 (providing that where jury has been instructed that defendant is presumed innocent and that State bears burden of proving the defendant's guilt beyond a reasonable doubt, the equal-and-exact-justice instruction does not deny defendant the presumption of innocence or lessen burden of proof). It follows that Archanian has not shown deficient performance or prejudice. Therefore, the district court did not err in denying this claim.

Second, Archanian argues that trial counsel should have requested that the jury be instructed that the weighing of aggravating and mitigating circumstances must be beyond a reasonable doubt. The weighing of aggravating and mitigating circumstances is not a factual determination and thus it is not subject to the beyond-a-reasonable-doubt standard. *Nunnery v. State*, 127 Nev. 749, 775-76, 263 P.3d 235, 253 (2011); *accord Kansas v. Carr*, ___ U.S. ___, 136 S. Ct. 633, 642 (2016) (concluding that the weighing of aggravating and mitigating circumstances is not subject to the beyond-a-reasonable-doubt standard). It follows that Archanian has not demonstrated deficient performance or prejudice and the district court did not err in denying this claim.

Third, Archanian argues that trial counsel should have objected to the felony murder aggravating circumstance instruction because it did not instruct the jury on the elements of the aggravating circumstance. On

direct appeal, this court concluded that the aggravating circumstance was invalid under *McConnell v. State*, 120 Nev. 1043, 102 P.3d 606 (2004), but that Archanian would nevertheless have been sentenced to death in its absence. *Archanian*, 122 Nev. at 1040-41, 145 P.3d at 1023. Given that decision, Archanian has not shown prejudice. Therefore, the district court did not err in denying this claim.[7]

*Vienna Convention*

Archanian contends that trial counsel should have informed him of his rights under Article 36 of the Vienna Convention on Consular Relations and contacted the Armenian consulate. Archanian was represented by counsel, provided with an interpreter, and had access to investigative services during his trial. The record does not indicate what evidence the Ministry of Foreign Affairs in Armenia could have assisted in gathering for Archanian's trial. Although Archanian suggested that the consulate could have assisted in gathering mitigating evidence, the evidence presented with the postconviction petition was not so persuasive as to have made it reasonably probable that the jury would not have imposed the death penalty. Archanian therefore has not shown prejudice. *See Osagiede v. United States*, 543 F.3d 399, 412-13 (7th Cir. 2008) (explaining that to show prejudice based on counsel's failure to inform

---

[7]Archanian has also raised these jury instruction claims as trial error. As these claims could have been raised on appeal and Archanian has not demonstrated good cause or actual prejudice, the district court did not err in denying them. *See* NRS 34.810(1)(b)(2). Archanian further argues that the district court erred in denying his claims that appellate counsel was ineffective for failing to challenge these instructions. As the given instructions were not erroneous nor was he prejudiced by them, he failed to demonstrate deficient performance by appellate counsel.

Supreme Court
OF
Nevada

(O) 1947A

14

defendant of Vienna Convention rights, defendant must present evidence that the consulate could have assisted him and that it would have assisted him). The district court accordingly did not err in denying this claim.

*Confrontation Clause*

Archanian contends that trial counsel should have objected to the medical examiner's testimony as violating the Confrontation Clause.[8] To the extent that Dr. Knoblock testified about Dr. Telgenhoff's findings regarding Quiroga's cause of death, his testimony violated the Confrontation Clause. *See Vega v. State*, 126 Nev. 332, 236 P.3d 632 (2010) (recognizing that under *Crawford v. Washington*, 541 U.S. 36 (2004), the Confrontation Clause prohibits the admission of a non-testifying analyst's findings through another analyst's testimony). But, even without that testimony, there was overwhelming evidence that Quiroga was murdered, including video showing a partial view of the attack on her and testimony of officers who responded to the scene and found her lifeless body. As such, Archanian did not show prejudice. Therefore, the district court did not err in denying this claim.[9]

---

[8]Archanian also argues that the district court erred in admitting the medical examiner's testimony. This claim could have been raised on appeal and Archanian did not demonstrate good cause or actual prejudice for his failure to do so. *See* NRS 34.810(1)(b)(2).

[9]Archanian also argues that the district court erred in denying his claim that appellate counsel was ineffective for failing to assert the Confrontation Clause error. As there was overwhelming evidence that Quiroga was murdered, appellate counsel would not have been able to demonstrate that any error was not harmless.

*Ineffective assistance of appellate counsel*

Archanian contends that the district court erred in denying his claims that appellate counsel was ineffective. To prove ineffective assistance of appellate counsel, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness, and but for counsel's errors, the omitted issue would have had a reasonable probability of success on appeal. *Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996). Appellate counsel is not required to raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Rather, appellate counsel will be most effective when every conceivable issue is not raised on appeal. *Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989).[10]

*Ineffective assistance of trial counsel*

Archanian contends that appellate counsel should have argued that trial counsel was ineffective. Because claims of ineffective assistance of counsel generally cannot be raised on direct appeal, *Evans*, 117 Nev. at 647, 28 P.3d at 523, Archanian has not shown deficient performance. Therefore, the district court did not err in denying this claim.

*Probable cause determination*

Archanian argues that appellate counsel should have argued that the aggravating circumstances and whether those circumstances were

_____

[10]Archanian improperly incorporates by reference other parts of his opening brief to support his argument that appellate counsel provided ineffective assistance. *See Evans*, 117 Nev. at 647, 28 P.3d at 523 (cautioning petitioners against asserting ineffective-assistance claims "in a *pro forma*, perfunctory way" as the court may decline to consider them). We have addressed Archanian's issues with appellate counsel's performance to the extent they are discernible.

not outweighed by the mitigating evidence must be subjected to a probable cause determination.[11] The Nevada Constitution does not mandate that aggravating circumstances be charged in an indictment or information.[12] Therefore, the aggravating circumstances and the weighing of them against mitigating circumstances need not be subjected to a pretrial probable cause determination. Accordingly, Archanian has not shown deficient performance.

### Cumulative error

Archanian argues that appellate counsel should have argued that the cumulative effect of trial errors deprived him of a fair trial. In the direct appeal, this court found only two errors, both in the penalty phase of the trial: the district court answered a jury question through a bailiff instead of in writing and one of the aggravating circumstances was invalid. *Archanian v. State,* 122 Nev. 1019, 1036, 1040-41, 145 P.3d 1008, 1020, 1023-24 (2006). Archanian has not explained how the two errors combined to deprive him of his rights. He therefore has not shown deficient performance or prejudice based on appellate counsel's omission of a cumulative-error argument. Accordingly, the district court did not err in denying this claim.

---

[11]To the extent that Archanian argues that the trial court erred in failing to require a probable cause determination, this claim could have been raised on direct appeal and Archanian failed to demonstrate good cause and actual prejudice. *See* NRS 34.810(1)(b)(2).

[12]In federal prosecutions, the government is required to charge aggravating circumstances in an indictment based on the Fifth Amendment's grand jury clause, *see United States v. Cotton,* 535 U.S. 625, 627 (2002), but that clause does not apply to the States, *see Apprendi v. New Jersey,* 530 U.S. 466, 477 n.3 (2000); *Alexander v. Louisiana,* 405 U.S. 625, 633 (1972).

*Reweighing*

Archanian contends that this court improperly reweighed the remaining valid aggravating circumstance and the mitigating circumstances when it upheld his death sentence because only the jury can weigh aggravating and mitigating circumstances. Archanian argues that the district court erred in denying this claim without considering the new mitigation evidence he presented with his petition.

Archanian challenged this court's reweighing in a petition for rehearing. This court denied rehearing, and he has not demonstrated that decision was "'so clearly erroneous that continued adherence to [it] would work a manifest injustice,'" *Hsu*, 123 Nev. at 631, 173 P.3d at 729 (quoting *Clem*, 119 Nev. at 620, 81 P.3d at 525), particularly given our decisions in other recent cases reiterating that the weighing of aggravating and mitigating circumstances is not a factual determination, *e.g., Jeremias v. State*, 134 Nev., Adv. Op. 8, ___ P.3d ___ (2018); *Lisle v. State*, 131 Nev., Adv. Op. 39, 351 P.3d 725, 733 (2015); *Nunnery v. State*, 127 Nev. 749, 772, 263 P.3d 235, 250 (2011). Further, we have repeatedly rejected the idea that new mitigating evidence must be considered when the court reweighs aggravating and mitigating circumstances after invalidating an aggravating circumstance because, like harmless-error review, reweighing considers the impact that the error (the invalid aggravating circumstance) had on the jury's determination and therefore the court can only consider the information provided to the jury. *See Bejarano v. State*, 122 Nev. 1066, 1081, 146 P.3d 265, 276 (2006) ("Reweighing requires us to answer the following question: Is it clear beyond a reasonable doubt that absent the invalid aggravators the jury still would have imposed a sentence of death?"); *Rippo v. State*, 122 Nev. 1086, 1093-94, 146 P.3d 279, 284 (2006) (striking

SUPREME COURT
OF
NEVADA

(O) 1947A



three aggravating circumstances under *McConnell* and reweighing, looking only to the trial record for mitigating evidence); *Haberstroh v. State*, 119 Nev. 173, 184 n.23, 69 P.3d 676, 683 n.23 (2003) (reweighing does not involve factual findings "other than those of the jury at the original penalty hearing"); *Bridges v. State*, 116 Nev. 752, 766, 6 P.3d 1000, 1010 (2000) (indicating that this court reweighed based on a "review of the trial record"). While the court in *Haberstroh* acknowledged that the petitioner would present mitigation evidence in a new penalty hearing that had not been presented at trial, it did not base its decision on that evidence but reached its conclusion that the jury might not have returned a death sentence absent the invalid aggravating circumstance based solely on the emphasis placed on the invalid aggravating circumstance during the original penalty hearing and the relative weight of the remaining aggravating circumstances. 119 Nev. at 184, 69 P.3d at 683-84. Even if this court had not been consistent in this respect, that would not entitle Archanian to an erroneous application of the law. *See, e.g., State v. Dist. Ct. (Riker)*, 121 Nev. 225, 236, 112 P.3d 1070, 1077 (2005) (providing that prior inconsistent application of rule does not provide court with basis to fail to apply rule in future case).

*Cumulative error*

Archanian argues that the district court erred in denying his claim that the cumulative effect of trial error and the ineffective assistance of trial and appellate counsel rendered his conviction invalid. The trial errors that are procedurally barred under NRS 34.810(1)(b)(2) cannot logically be used to support a cumulative-error claim because they have not been considered on their substantive merits. Similarly, claims that this court previously rejected on their substantive merits also cannot logically

SUPREME COURT
OF
NEVADA

(O) 1947A

19

be used to support a cumulative-error claim because we have already found there was no error. *In re Reno*, 283 P.3d 1181, 1224 (Cal. 2012). Even assuming that multiple deficiencies in counsel's performance may be cumulated to find prejudice under the *Strickland* test, *see McConnell v. State*, 125 Nev. 243, 259 n.17, 212 P.3d 307, 316 n.17 (2009), there are not multiple deficiencies in this case to cumulate. Accordingly, there is nothing to cumulate with the two errors found on direct appeal. The district court therefore did not err in denying this claim.[13]

Having considered Archanian's contentions and concluding that they lack merit, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Stiglich

---

[13]Archanian's claim that the lethal injection protocol violates the Eighth Amendment is not cognizable in a postconviction habeas petition. *See McConnell*, 125 Nev. at 249, 212 P.3d at 311.

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Hon. Kathleen E. Delaney, District Judge
Oronoz & Ericsson, LLC
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(0) 1947A